

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

Paul A. Riley
Assistant United States Attorney
Paul.Riley@usdoj.gov

Suite 400
36 S. Charles Street
Baltimore, MD 21201-3119

DIRECT: 410-209-4959
MAIN: 410-209-4800
FAX: 410-962-0716

August 30, 2017

Harry J. Trainor, Jr.
Trainor, Billman, Bennett & Milko, LLP
116 Cathedral Street, Suite E
Annapolis, Maryland 21401

Re: <u>United States v. Anna Maria Caldararu</u>, Crim. No. MJG-17-0155

Dear Mr. Trainor:

This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have her execute it in the spaces provided below. If this offer has not been accepted by **September 13, 2017**, it will be deemed withdrawn. The terms of the agreement are as follows:

### Offenses of Conviction

1. The Defendant agrees to plead guilty to Count One and Count Five of the Indictment now pending against her, which charges her with Conspiracy to Commit Access Device Fraud, in violation of 18 U.S.C. §§ 1029(a)(1) and (b)(2) (Count One); and Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A(a)(1) (Count Five). The Defendant admits that she is, in fact, guilty of these offenses and will so advise the Court.

### Elements of the Offenses

2. The elements of the offenses to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

#### Count One: Conspiracy to Commit Access Device Fraud

a. The Defendant knowingly conspired and agreed with at least one other person charged in the indictment to commit access device fraud, the elements of which are:

b. The Defendant knowingly used and trafficked in the unauthorized access devices at any time during a one-year period beginning in or about July 2016 and ending in March 2017;

1

  c. By using and trafficking in the unauthorized access devices during that period, the Defendant obtained things of value worth more than $1,000 during that period;

  d. The Defendant acted with the intent to defraud; and

  e. The Defendant's conduct affected commerce between one state and another state, or between a State of the United States and a foreign country.

### Count Five: Aggravated Identity Theft

  a. The Defendant knowingly transferred, possessed, or used the means of identification of another person without lawful authority;

  b. The Defendant did not have legal authority to transfer, use, or possess the means of identification; and

  c. The Defendant's unlawful transfer, possession or use of the means of identification occurred during and in relation to the Conspiracy to Commit Access Device Fraud, as set forth in Count One.

### Penalties

3. The maximum sentence provided by statute for the offense to which the Defendant is pleading guilty is as follows: as to Count One, 5 years' imprisonment, not more than three years' supervised release, and a fine of $250,000; and as to Count Five, a two year mandatory term of imprisonment to be imposed consecutive to any sentence imposed on Count One, a fine of $250,000, and period of supervised release of one year. In addition, the Defendant must pay $200 as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing. This Court may also order her to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.[1] If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The Defendant understands that if she serves a term of imprisonment, is released on supervised release, and then violates the conditions of her supervised release, her supervised release could be revoked – even on the last day of the term – and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

### Waiver of Rights

4. The Defendant understands that by entering into this agreement, she surrenders certain rights as outlined below:

---

[1] Pursuant to 18 U.S.C. § 3612, if the Court imposes a fine in excess of $2,500 that remains unpaid 15 days after it is imposed, the Defendant shall be charged interest on that fine, unless the Court modifies the interest payment in accordance with 18 U.S.C. § 3612(f)(3).

2

a.  If the Defendant had persisted in her plea of not guilty, she would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

b.  If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

c.  If the Defendant went to trial, the Government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the Government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in her defense, however, she would have the subpoena power of the Court to compel the witnesses to attend.

d.  The Defendant would have the right to testify in her own defense if she so chose, and she would have the right to refuse to testify. If she chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from her decision not to testify.

e.  If the Defendant were found guilty after a trial, she would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against her. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

f.  By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that she may have to answer the Court's questions both about the rights she is giving up and about the facts of her case. Any statements the Defendant makes during such a hearing would not be admissible against her during a trial except in a criminal proceeding for perjury or false statement.

g.  If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find her guilty.

h.  By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status. The Defendant recognizes that if she is not a citizen of the United States, pleading guilty may have consequences with respect to her immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding,

however, and the Defendant understands that no one, including her attorney or the Court, can predict with certainty the effect of a conviction on immigration status. Defendant nevertheless affirms that she wants to plead guilty regardless of any potential immigration consequences.

## Advisory Sentencing Guidelines Apply

5. The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

## Factual and Advisory Guidelines Stipulation

6. This Office and the Defendant understand, agree and stipulate to the Statement of Facts set forth in Attachment A hereto which this Office would prove beyond a reasonable doubt, and to the following applicable sentencing guidelines factors:

## Count One (Conspiracy to Commit Access Device Fraud)

a. Pursuant to United States Sentencing Guidelines ("U.S.S.G.") § 2B1.1(a)(1), the base offense level is 6.

b. The offense level is increased by 12 levels, pursuant to U.S.S.G. § 2B1.1(b)(1)(G), because the loss exceeded $250,000 but was not more than $550,000.

c. The offense level is increased by 2 levels, pursuant to U.S.S.G. § 2B1.1(b)(2)(a)(i), because the offense involved 10 or more victims.

d. The offense level is increased by 2 levels, pursuant to U.S.S.G. § 3B1.4, because the offense involved the use of a minor.

e. This Office does not oppose a 2-level reduction in the Defendant's adjusted offense level, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for her criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional 1-level decrease in recognition of the Defendant's timely notification of his intention to plead guilty. This Office may oppose any adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about her involvement in the offense; (d) is untruthful with the Court, this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw her plea of guilty

**Accordingly, the final anticipated adjusted offense level as to Count One is 19.**

4

### Count Five (Aggravated Identity Theft)

  f. Pursuant to U.S.S.G. § 2B1.6, the term of imprisonment to be imposed as to Count Five is the term of imprisonment required by 18 U.S.C. § 1028A, which is **two years**, to be imposed consecutive to any other sentence.

  7. The Defendant understands that there is no agreement as to her criminal history or criminal history category, and that her criminal history could alter her offense level if she is a career offender or if the instant offense was a part of a pattern of criminal conduct from which she derived a substantial portion of her income.

  8. This Office and the Defendant agree that with respect to the calculation of the advisory guidelines range, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines will be raised or are in dispute. If the Defendant wishes to argue for any factor that could take the sentence outside of the advisory guidelines range, she will notify the Court, the United States Probation Officer and government counsel at least 14 days in advance of sentencing of the facts or issues she intends to raise.

### Obligations of the United States Attorney's Office

  9. At the time of sentencing, this Office will move to dismiss all remaining open counts against the Defendant.

  10. The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct.

### Restitution

  11. The Defendant agrees to the entry of a Restitution Order for the full amount of the victims' losses, as set forth in the Stipulated Facts, and shall be due and payable immediately upon sentencing. The Defendant agrees that, pursuant to 18 U.S.C. §§ 3663 and 3663A and §§ 3563(b)(2) and 3583(d), the Court may order restitution of the full amount of the actual, total loss caused by the offense conduct set forth in the factual stipulation. The Defendant further agrees that she will fully disclose to the probation officer and to the Court, subject to the penalty of perjury, all information, including but not limited to copies of all relevant bank and financial records, regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation. The Defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution. If the Defendant does not fulfill this provision, it will be considered a material breach of this plea agreement, and this Office may seek to be relieved of its obligations under this agreement.

## Collection of Financial Obligations

12. The Defendant expressly authorizes the U.S. Attorney's Office for the District of Maryland to obtain a credit report in order to evaluate the Defendant's ability to satisfy any financial obligation imposed by the Court.

13. In order to facilitate the collection of financial obligations to be imposed in connection with this prosecution, the Defendant agrees to disclose fully all assets in which the Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee or other third party.

14. The Defendant will promptly submit a completed financial statement to the United States Attorney's Office, in a form this Office prescribes and as it directs. The Defendant promises that the financial statement and disclosures will be complete, accurate and truthful, and understands that any willful falsehood on the financial statement will be a separate crime and may be punished under 18 U.S.C. § 1001 by an additional five years' incarceration and fine.

## Waiver of Appeal

15. In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

   a. The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction.

   b. The Defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release).

   c. Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

   d. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

## Obstruction or Other Violations of Law

16. The Defendant agrees that she will not commit any offense in violation of federal, state or local law between the date of this agreement and her sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement that would justify a

finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for her conduct by failing to acknowledge her guilt to the probation officer who prepares the Presentence Report, (iii) moves to withdraw her guilty plea or (iv) commits any offense in violation of federal, state, or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that she may not withdraw her guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

## Court Not a Party

17. The Defendant expressly understands that the Court is not a party to this agreement. In the federal system, the sentence to be imposed is within the sole discretion of the Court. In particular, the Defendant understands that neither the United States Probation Office nor the Court is bound by the stipulation set forth above, and that the Court will, with the aid of the Presentence Report, determine the facts relevant to sentencing. The Defendant understands that the Court cannot rely exclusively upon the stipulation in ascertaining the factors relevant to the determination of sentence. Rather, in determining the factual basis for the sentence, the Court will consider the stipulation, together with the results of the presentence investigation, and any other relevant information. The Defendant understands that the Court is under no obligation to accept this Office's recommendations, and the Court has the power to impose a sentence up to and including the statutory maximum stated above. The Defendant understands that if the Court ascertains factors different from those contained in the stipulation set forth above, or if the Court should impose any sentence up to the maximum established by statute, the Defendant cannot, for that reason alone, withdraw her guilty plea, and will remain bound to fulfill all of her obligations under this agreement. The Defendant understands that neither the prosecutor, her counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

## Entire Agreement

18. This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have her sign the original and return it to me promptly.

7

Very truly yours,

Stephen M. Schenning
Acting United States Attorney

By: _____
Paul A. Riley
Lauren Perry
Assistant United States Attorneys

I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

12/14/2017                         *Anna Maria Caldararu*
Date                               Anna Maria Caldararu

I am Anna Maria Caldararu's attorney. I have carefully reviewed every part of this agreement, including the Sealed Supplement with her. She advises me that she understands and accepts its terms. To my knowledge, her decision to enter into this agreement is an informed and voluntary one.

12/14/2017                         _____
Date                               Harry Trainor, Esq.

8

## Attachment A

*The undersigned parties hereby stipulate and agree that the following facts are true and accurate, and that if this matter had gone to trial, the government would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter gone to trial.*

Defendant Anna Maria Caldararu ("Caldararu"), age 21, is a citizen of Romania and resides in Baltimore, Maryland. As set forth below, Caldararu, her co-defendant and partner Francisco Dumitru ("Dumitru"), and others, including minors, participated in an ATM skimming operation throughout Maryland, West Virginia, Virginia, and California that lasted from in or about at least July 2016 through March 2017.

Caldararu, Dumitru, and other participants in the scheme illegally obtained debit and credit card account numbers and personal identification numbers (PINs) using small skimming devices ("ATM skimmers") and miniature "pin hole" cameras. Caldararu and others affixed these ATM skimmers over the slot where customers inserted their debit or credit cards in order to capture account information from each card that passed through the skimmer. These compromised account numbers and information were then encoded on the magnetic strips of plastic cards such as gift cards, creating counterfeit access devices.

Caldararu, Dumitru, and others, then used those counterfeit access devices, along with the corresponding PINs, to make unauthorized withdrawals of U.S. currency directly from victims' bank accounts. Details concerning the skims in which Caldararu and her partner Dumitru participated are below.

### DuPont Community Credit Union

On July 23, 2016, an individual placed an ATM skimmer on a DuPont Community Credit Union ATM located in Waynesboro, Virginia that captured the account information of the victim customers. From July 23, 2016 through July 24, 2016, Caldararu and others, including Dumitru's minor cousin, withdrew $67,283.50 from 260 victim accounts without legal authority at ATMs throughout Maryland.

### First United Bank

On September 30, 2016, an individual placed an ATM skimmer on the First United Bank ATMs located at branches in Hagerstown, Maryland; Myersville, Maryland; and Martinsburg, West Virginia that captured the account information of the victim customers. GPS coordinates from an Immigrations and Customs Enforcement (ICE) monitoring device confirm that Dumitru was present in Hagerstown, Myersville, and Martinsburg on that day. From October 15, 2016 through October 26, 2016, Caldararu, Dumitru and others, including Dumitru's minor cousin, withdrew $72,000 from 90 victim accounts without legal authority at ATMs throughout Maryland.

1

### City National Bank

On October 2, 2016 and October 8, 2016, an individual placed an ATM skimmer on a City National Bank ATM located in Martinsburg, Virginia that captured the account information of the victim customers. GPS coordinates from an ICE monitoring device confirm that Dumitru was present in Martinsburg on both October 2, 2016 and October 8, 2016. From October 2, 2016 through October 18, 2016, Caldararu and others, including Dumitru's minor cousin, withdrew $45,963 from 80 victims accounts without legal authority at ATMs throughout Maryland.

### Capital One Bank

On October 6, 2016 and October 18, 2016, an individual placed an ATM skimmer on Capital One Bank ATMs located in Silver Spring, Maryland that captured the account information of the victim customers. On October 14, 2016, an individual placed an ATM skimmer on the Capital One Bank ATM located in Hyattsville, Maryland. From October 22, 2016 through November 6, 2016, Dumitru's minor cousin and others withdrew $7,704.85 from 119 victim accounts without legal authority at ATMs throughout Maryland.

### Cedar Point Federal Credit Union

On October 29, 2016, an individual placed an ATM skimmer on a Cedar Point Federal Credit Union branch ATM located in Prince Frederick, Maryland, that captured the account information of the victim customers. On October 30, 2016, Caldararu placed an ATM skimmer on an ATM at the same branch that likewise captured the account information of the victim customers. Dumitru's vehicle, a dark blue minivan, was present at the Cedar Point branch location on these dates, and Dumitru himself scouted the ATM on October 28, 2016. GPS coordinates from an ICE monitoring device confirm Dumitru's presence in Prince Frederick, Maryland on October 29, 2016. From October 15, 2016 through October 31, 2016, Caldararu and others, including Dumitru's minor cousin, withdrew $6,526 from 33 victim accounts without legal authority at ATMs throughout Maryland.

### Argent Federal Credit Union

On November 12, 2016 and November 13, 2016, an individual placed an ATM skimmer on an Argent Federal Credit Union branch ATM located in Chester, Virginia that captured the account information of the victim customers. From November 19, 2016 through November 20, 2016, Caldararu and others, including Dumitru's minor cousin, withdrew $67,000 from 98 victim accounts without legal authority at ATMs throughout Maryland.

### Pacific Marine Credit Union

On January 21, 2017, an individual placed an ATM skimmer on a Pacific Marine Credit Union branch ATM located in Temecula, California that captured the account information of the victim customers. Later that day, Caldararu and others withdrew $1,722 from three victim accounts at ATMs throughout Maryland.

### United Bank

On March 4, 2017, Dumitru's minor cousin placed an ATM skimmer on a United Bank ATM located in Hagerstown, MD that captured the account information of the victim customers. Later that day, $1,796 was withdrawn from seven victim accounts.

### Evidence at Defendant's Home

On March 6, 2016, law enforcement executed a search and seizure warrant at the home of Dumitru, Caldararu, and Dumitru's minor cousin. During the execution of the warrant, officers recovered over 75 cards re-encoded with victim account information and discovered a room in the home that appeared to be dedicated to both assembling ATM skimmers and re-encoding cards to conduct fraudulent cash-outs. It contained, among other things, three card re-encoding machines, ATM face plates identical to ones used in the skimming incidents referenced above, computer circuit boards, cell phone batteries (used to power the skimmers), SD cards (used to save the ATM account information), hot glue guns, tape, a power drill, and pin hole camera components. Law enforcement also recovered $4423 in cash, a diamond-encrusted Breitling brand watch, a key to a Bentley automobile, and two laptop computers.

The computers contained, among other things, pin hole camera footage of ATM users inputting their pin codes at various ATMs, as well as account information of victim customers. Pinhole camera footage from Altura Credit Union ("Altura"), located in Riverside County, California, was among the footage present on one of the computers. In December 2016, four ATM skimmers were placed on various Altura ATMs that captured the account information of victim customers. These ATM skimmers resulted in a total of $59,424.42 being withdrawn from victim accounts.

Caldararu's automobile, which was purchased using fraudulently obtained funds, was also present at the home.

At all times during the relevant period of July 2016 through March 2017, each of the above-referenced banks and credit unions were financial institutions engaged in interstate and/or foreign commerce. Thus, the skimming incidents in which Caldararu and Dumitru participated affected interstate/or foreign commerce.

***

I have reviewed the foregoing statement of facts with my attorney, understand it, agree with it, and do not wish to change any part of it. I further understand that it is included as part of my plea agreement with the government in this case.

*Anna Maria Caldararu*
Anna Maria Caldararu

3

I am Ms. Caldararu's attorney. I have carefully reviewed the statement of facts with her.

Harry Trainor, Esq.
Counsel for Anna Maria Caldararu